IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel.    )
FREDERICK APPLEGATE    )
    )
        Petitioner,    )
    )
      v.    )    No. 09 C 4750
    )
WARDEN GAETZ,    )
    )
        Respondent.    )

## OPINION AND ORDER

In 2003, following a bench trial in the Circuit Court of
Cook County, Illinois, Frederick Applegate ("Applegate") was
found guilty of seven counts of criminal sexual assault in
violation of 720 ILCS 5/12 and two counts of aggravated criminal
sexual abuse 720 ILCS 5/12-16(b). The victim of the crimes was
Applegate's then 15-year-old daughter, S.B. Applegate was
sentenced to a total of 52 years' imprisonment. In 2005,
Applegate's conviction was affirmed on direct appeal to the
Illinois Appellate Court[1] and, in 2006, the Illinois Supreme

---

[1]The unpublished order of the Illinois Appellate Court is
provided as Exhibit B to petitioner's memorandum in support of
his habeas petition [6] and Exhibit A to respondent's answer to
the petition [15-1].

Court denied leave to appeal. His pro se post-conviction petition and related supplements were denied and, in an order dated March 31, 2009, the denial of post-conviction relief was affirmed by the Illinois Appellate Court.[2] Applegate did not seek leave to appeal the Appellate Court's affirmance of the denial of post-conviction relief. Thereafter, Applegate filed, in this court, a timely petition for habeas corpus relief.

In August 2001, Applegate was paroled from prison and moved into the basement of the home of his mother ("Brenda"). At the time, Applegate's daughter S.B. was being raised by her grandmother and was using a bedroom in an upstairs apartment. Applegate's brother Billy was also using a bedroom in an upstairs apartment. Because he had been in prison most of S.B.'s life, Applegate did not previously have an established relationship with his daughter.

On April 27, 2002, Brenda received a note S.B. had written stating she had been molested by her father. When Applegate's parole officer, John Delosmoteros, called, Brenda got on the telephone and urged him to come over, which he did. When Delosmoteros arrived, Brenda showed him S.B.'s note. At trial,

_____

[2]The unpublished order of the Illinois Appellate Court is provided as Exhibit H to petitioner's memorandum in support of his habeas petition [6] and Exhibit R to respondent's answer to the petition [15-18].

Delosmoteros testified that while reading the note, Applegate stated he had been doing this for at least two months and needed help. Subsequently, Delosmoteros directed Applegate to go to the police station.

A detective and assistant state's attorney ("ASA") testified that, in separate interviews, Applegate admitted having sexual intercourse with S.B. four or five times or more. The detective also testified that he interviewed S.B. who reported Applegate had molested her. A couple days later, another ASA interviewed S.B. and she signed a statement that she had been molested by Applegate. S.B. also testified before a grand jury.

S.B. was also examined by an expert in pediatric medicine and child abuse. S.B. told that doctor that she had had sexual intercourse with her father. The medical examination disclosed no evidence of sexual abuse, but the doctor testified that this was true of up to 95% of children who had been abused.

At trial, S.B. testified that she had never had sexual intercourse with her father nor had he ever touched her improperly. She also denied stating to the ASA and detective that such conduct had occurred. She instead explained that she had made up the story because her father had attempted to impose discipline on her, including doing chores and a curfew that interfered with her seeing her boyfriend. She hoped that the

note that her grandmother received would result in her father

being kicked out of the house and the restrictions being eased.

She had not expected that it would result in criminal charges.

Following the initial close of evidence, the trial judge

found Applegate guilty of all offenses. Applegate then filed a

pro se motion for a new trial complaining of ineffective

assistance of counsel for failure to call key witnesses,

including Applegate himself. An affidavit of Billy was provided

stating that he could testify that he never saw Applegate in

S.B.'s bedroom[3] and that S.B. had never complained of sexual

contact by Applegate. When questioned about the motion in court,

other than Billy, Applegate could not sufficiently identify who

the other key witnesses might be who had not yet testified.[4] In

part because Applegate's waiver of his right to testify had not

been done on the record, the trial judge vacated his initial

---

[3]Neither side points to any evidence regarding where the
molestation was stated to have occurred.

[4]Applegate also made reference to his brother Jerry, but
did not identify the nature of Jerry's potential testimony. In a
statement dated a few days after presenting the motion for a new
trial, Jerry only states that he was present when the parole
officer was talking to the family on the day S.B.'s note was
revealed. This statement of Jerry apparently was part of a
second pro se motion for a new trial that Applegate filed. In an
affidavit contemporaneous with Applegate's later post-conviction
motion, Jerry expressly states that Applegate did not state to
the parole officer that he had been molesting S.B. for two
months.

- 4 -

finding of guilt and reopened the case to allow Applegate to
testify in his own defense.  In his testimony, Applegate denied
the charges and also denied admitting to the parole officer,
detective, or ASA that he had had sexual intercourse with S.B.
The trial judge also provided an opportunity to present other
additional witnesses, but Applegate, who was still represented by
the same attorney, did not offer any further witnesses.  After
taking the additional evidence, the trial judge again found
Applegate guilty.  Applegate thereafter filed a second pro se
motion for a new trial which was denied.

On direct appeal, the only issued raised by Applegate was
the contention that the trial court had not adequately inquired
into his ineffective assistance of counsel claims, particularly
by not expressly asking trial counsel why he had not called Billy
as a witness.  The Appellate Court held that, even without
expressly addressing the nature of Billy's testimony or directly
asking trial counsel why he had not called Billy, the trial court
made a sufficient inquiry.  This was shown by the trial court's
discussion of the witnesses who actually testified.  The
Appellate Court further noted that, after reopening the record to
permit Applegate's testimony, the trial court permitted other
witnesses to be called.  Billy could have been called at that
time, but was not.

After the affirmance on direct appeal, Applegate brought a pro se post-conviction petition and supplements raising a number of issues. After the trial court denied relief, Applegate raised only two issues on appeal, a claim of actual innocence and a claim that appellate counsel was ineffective for failing to raise a sufficiency of evidence claim on direct appeal. The Appellate Court held that the evidence did not support either claim. Two of the judges who decided the post-conviction appeal were also on the panel deciding Applegate's direct appeal. Applegate did not seek leave to appeal to the Illinois Supreme Court.

In his timely filed pro se habeas petition, Applegate raises three claims: (I) sufficiency of the evidence; (II) the trial judge abused his discretion for failing to inquire into the potential testimony of Billy and Jerry; and (III) the failure of two judges to recuse themselves from his post-conviction appeal. Respondent's primary contentions are that Claim I is procedurally defaulted because Applegate did not seek leave to appeal the Appellate Court's post-conviction decision and Claim III is procedurally defaulted because not raised in any state proceeding. As to Claim II, respondent contends it is a state law claim not cognizable in a federal habeas corpus proceeding.

In order to raise a claim in a federal habeas corpus proceeding, a petitioner convicted in Illinois state court must first fairly present the claim in state court, including by seeking leave to appeal to the Illinois Supreme Court. If the claim is not fully and fairly presented in the Illinois courts, it is procedurally defaulted for purposes of a federal habeas corpus proceeding. Guest v. McCann, 474 F.3d 926, 930 (7th Cir. 2007); Barnes v. Walls, 265 F. Supp. 2d 930, 932-33 (N.D. Ill. 2003). Applegate concedes that he failed to fully present Claims I and III, but contends he meets the miscarriage of justice exception. He contends he meets this exception because there was insufficient evidence to convict him. Insufficiency of evidence is not an exception to the procedural default rule. See, e.g., Bek v. United States, 2008 WL 5069329 *4 (N.D. Ind. Nov. 24, 2008); Hill v. McBride, 2006 WL 5819787 *5 (N.D. Ind. March 30, 2006), aff'd sub nom., Hill v. Wilson, 519 F.3d 366 (7th Cir. 2008). Instead, the miscarriage of justice exception is limited to showings of actual innocence. See Schlup v. Delo, 513 U.S. 298 (1995); Holmes v. Hardy, 608 F.3d 963, 968 (7th Cir. 2010); United States ex rel. Thomas v. Gaetz, 633 F. Supp. 2d 645, 654-55 (N.D. Ill. 2009). Liberally construing Applegate's pro se filing, it will be construed as raising an actual innocence contention.

The miscarriage of justice exception requires a showing that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Holmes, 608 F.3d at 1068 (quoting House v. Bell, 547 U.S. 518, 537 (2006) (quoting Schlup 513 U.S. at 327)). Applegate, however, does not rely on new evidence. He contends that the evidence at trial was insufficient to convict him. He also presents the new argument that he is innocent because his DNA was not found on S.B., her clothing, or her bedding. He does not contend that sperm or other material was found in any of those places and tests have shown that it did not match his DNA. He simply contends that the failure to have any such evidence matching his DNA supports he is innocent. That is not sufficient to establish actual innocence. Claims I and III are procedurally defaulted.

As titled, Claim II refers to the trial court's abuse of discretion in failing to make an adequate inquiry as to the potential testimony of Applegate's brothers. In his argument, however, Applegate makes reference to the denial of due process, including the right to present a defense. Respondent alternatively contends that any constitutional basis for the claim is procedurally defaulted because, on direct appeal, only the state law abuse of discretion contention was raised. On

- 8 -

direct appeal, Applegate did not rely on a contention that the record showed he had been deprived of the effective assistance of counsel or some other constitutional right. It was only contended that the trial court erred by failing to further develop the record so that it could be determined if trial counsel should be replaced because ineffective for failing to call Billy as a witness. There was no contention that an ineffective assistance of counsel claim had adequately been shown. To the extent Applegate now seeks to raise an ineffective assistance of counsel claim, such a claim has been procedurally defaulted by failing to raise it in state court. Claim II is denied because it raises a state law claim not cognizable in a federal habeas corpus proceeding or, alternatively, because any constitutional issue that is raised in Claim II is procedurally defaulted because not raised in state court.

Applegate also filed a supplement to his federal habeas petition in which he raises issues regarding the validity of his indictment. Since this claim was not fully presented in the Illinois courts it is procedurally defaulted. Applegate has also moved to further supplement his petition. Since he again raises issues that were not fully presented to the Illinois courts, that motion will be denied.

Applegate does not present any substantial issue on which jurists could disagree.  A certificate of appealability will not issue.

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to amend the docket to reflect that respondent's name is Gaetz, not Gaetes.  Petitioner's motion to supplement [31] is denied.  The petition for a writ of habeas corpus is denied.  A certificate of appealability will not issue.  The Clerk of the Court is further directed to enter judgment in favor of respondent and against petitioner denying the petition for a writ of habeas corpus.  If petitioner wishes to appeal this order, he must file a Notice of Appeal to the United States Court of Appeals for the Seventh Circuit with the Clerk of the Court, United States District Court for the Northern District of Illinois, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604, within thirty (30) days of the entry of the judgment in this case.  A notice of appeal should be accompanied by a request for a certificate of appealability.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED:  AUGUST        ,  2010

- 10 -